IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION



FILED
DISTRICT COURT

09 MAY 27  PM 4: 07

LAURA A.
CLERK

| | | |
|---|---|---|
| KEVIN L. KING | ) | CASE NO: |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| vs. | ) | **1:09-cv- 0659 LJM -TAB** |
| | ) | |
| THE HOME SAVINGS and LOAN | ) | |
| COMPANY OF YOUNGSTOWN, OHIO, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| SKY FINANCIAL GROUP, INC. | ) | |
| | ) | |
| Individually and as Successor in Interest | ) | |
| To Second National Bank of Warren | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT FOR DAMAGES

### I.    INTRODUCTION

**COMES NOW**, the Plaintiff, Kevin L. King, by counsel, and files this Complaint against the Defendants The Home Savings and Loan Company of Youngstown, Ohio and Sky Financial Group, Inc. and alleges and states as follows:

### II.    PARTIES AND JURISDICTION

1.    Plaintiff Kevin L. King is an individual residing at 12940 Rocky Pointe Road, McCordsville, Indiana, 46055.

2.    Defendant The Home Savings and Loan Company of Youngstown, Ohio (hereinafter "Home Savings") is a financial holding company located at 275 Federal Plaza West, Youngstown, Ohio 44503.

3.   Defendant Sky Financial Group, Inc. (hereinafter "Sky") is a financial holding company located at 221 South Church Street, Bowling Green, Ohio 43402. On or around July 2004, Sky Financial Group acquired Second National Bank of Warren. As a result, Defendant Sky is a successor in interest to Second National Bank of Warren.

4.   This Court has jurisdiction over the conduct complained of pursuant to 28 U.S.C. 1331 and 28 U.S.C. 1332.

5.   Pursuant to 28 U.S.C. 1391, venue is proper in this Court for the following reasons:

    A.   The events giving rise to Plaintiff's claims occurred in this district.

    B.   The property that is the subject of the action was primarily located in this district.

    C.   Defendant Sky regularly does business in this district.

## III.   FACTS

6.   National Marine, Inc. ("National Marine") is a retailer of watercraft in Youngstown, Ohio.

7.   Defendants routinely financed sales of watercraft from National Marine to customers, including the Plaintiff, and utilized National Marine in the loan administration process.

8.   National Marine routinely mailed Defendants' loan documents to Plaintiff's home in McCordsville, Indiana, where they were executed by Plaintiff and returned to National Marine.

9.   Defendant Home Savings had a credit agreement with National Marine that provided a credit facility of $5,000,000.00 as part of a Floor Plan arrangement with Defendant.

10.   On or about August 20, 2003, Plaintiff purchased a 38' Top Gun Boat (the "Top Gun") from National Marine for a total purchase price of $405,000.00.

11.   Purchase of the Top Gun was financed by Defendant Sky in the amount of $355,650.00 and Defendant Sky took a security interest in the Top Gun.

12.   On or about February 21, 2004, Plaintiff traded in the Top Gun and purchased a 42'
      Outer Limits Boat ("42' Boat") for the purchase price of $700,000.00 from National
      Marine with a trade in allowance from the Top Gun of $100,000.00, for a total price of
      $600,000.00.

13.   Purchase of the 42' Boat was financed by Defendant Home Savings in the amount of
      $600,000.00 and Defendant Home Savings took a security interest in the 42' Boat.

14.   National Marine and Defendant Sky failed to discharge Defendant Sky's security
      interest and lien on the Top Gun.

15.   The Top Gun became a part of the Floor Plan inventory of National Marine and was
      sold to Jeff Wanamaker (hereinafter "Wanamaker") on or around March 2004, still
      subject to Defendant's Sky's security interest and lien.

16.   Defendant Home Savings financed the purchase of the Top Gun by Wanamaker,
      despite the existence of Defendant Sky's prior lien.

17.   Defendant Sky knew or should have known that National Marine took title to the Top
      Gun without discharging Defendant Sky's lien, and subsequently sold the Top Gun to
      Wanamaker without discharging Defendant Sky's lien.

18.   Pursuant to a settlement agreement between Plaintiff and Mr. Wanamaker, Plaintiff had
      the Top Gun returned to his possession in or around November 2004, still subject to the
      security interests and liens of both Defendant Sky and Defendant Home Savings.

19.   Plaintiff sold the Top Gun in for a loss of approximately $275,000.00.

20.   On or about July 24, 2004, Plaintiff King purchased a 51' Outer Limits Boat ("51'
      Boat") for the purchase price of $776,650.00 from National Marine.

21.   As part of the 51' Boat purchase transaction, Plaintiff traded in the 42' Boat and was
      given a net trade allowance of $150,000.00, leaving a balance due on the 42' Boat
      mortgage held by Defendant Home Savings of $596,542.00.

3

22. Plaintiff financed the purchase of the 51' Boat through a consumer note in favor of Fifth Third Bank on or about July 30, 2004 in the principal sum of $777,100.00.

23. National Marine agreed to discharge Defendant Home Savings' security interest and lien on the 42' Boat and but failed to do so.

24. Plaintiff continued to be obligated to make payments to Defendant Home Savings on the 42' Boat despite transferring title to the 42' Boat to National Marine.

25. Defendant Home Savings knew or should have known that National Marine took title to the 42' Boat without discharging Defendant Home Savings' security interest and lien.

26. Defendants knew or should have known that National Marine would not discharge the security interest and liens on the Top Gun or the 42' Boat for up to six months from the date National Marine acquired the boats.

27. Defendants knew or should have known that National Marine was insolvent and unable to pay their outstanding liabilities at the time of Plaintiff's transactions with National Marine.

28. Defendants failed to require National Marine to satisfy the liens on the Top Gun and 42' Boat in the course of the transfers from Plaintiff to Defendant in accordance with Ohio law O.R.C. 1548.20(D)(2) requiring that in the case of a security interest that is being satisfied by a watercraft dealer to whom a certificate of title is being transferred, the cancellation of the security interest must occur during the course of the transfer.

29. Defendants failed to follow standard prudent banking practices in the purchase of commercial paper from National Marine. These failures included:

    A. Failure to recognize that equity in the transaction created by a trade-in watercraft was, in fact, never a part of the transactions due to outstanding unpaid liens to other secured interests of record.

    B. Failure to take the necessary steps to ensure that the proceeds of loans to National Marine were or would be applied to satisfy Plaintiff's and other consumers' loans on their trade-in boats.

4

      C.     Failure to verify the delivery of clear and marketable title in the watercraft in which they claim a security interest.

      D.     Failure to require National Marine to discharge their liens on customers' boats at the time of trade-in.

      E.     Failure to act with reasonable care and in good faith in regard to the transactions and their customers.

30. The fraud committed by National Marine on Plaintiff and other customers could not have occurred without the participation of Defendants, who acted either with intentional or utter and reckless disregard of lending institution controls that are standard in the lending industry. Defendants' failures occurred despite their knowledge that National Marine was insolvent and unable to pay their outstanding liabilities.

## COUNT I—FEDERAL RICO (18 U.S.C. §1962)

Comes now, Plaintiff, by counsel, and complains against Defendants and states as follows:

31. Plaintiff restates and incorporates by reference rhetorical paragraphs 1-30 of Plaintiff's Complaint for Damages.

32. Under 18 U.S.C. §1962(d) of the Racketeer Influenced and Corrupt Organizations Act, it is unlawful to conspire to violate the prohibition against conducting an enterprise's affairs through a pattern of racketeering activity.

33. National Marine is engaged in interstate and foreign commerce.

34. National Marine was engaged in a pattern of racketeering activity through its scheme to defraud financial institutions and consumers by routinely taking possession of trade-in boats and selling the boats without discharging the security interests and liens on the used boats.

35. Defendants conspired with National Marine by permitting National Marine to include these used boats in National Marine's Floor Plan and sell these used boats to subsequent purchasers still subject to Defendants' security interests and liens.

36. Defendants knew or should have known about National Marine's misrepresentations regarding their intentions to discharge the security interests and liens on the used boats and their failure to do so, including Defendants' security interests on Plaintiff's boats.

37. Defendants conspired with National Marine in its scheme to defraud financial institutions and consumers by continuing to provide National Marine with financing through the Floor Plan financing arrangement and failing to require National Marine to discharge Defendants' liens at the time of trade-in and at the time of subsequent sales.

38. Plaintiff sustained injury as a result of Defendants' conduct in their relationship with National Marine.

**WHEREFORE**, Plaintiff respectfully requests the following:

      A.    Rescission of the contracts with Defendants.

      B.    Incidental damages.

      C.    Consequential damages.

      D.    Actual damages.

      E.    Punitive damages.

      F.    Pre and post judgment interest.

      G.    Return of all payments made by Plaintiff to Defendants.

      H.    All other just and proper relief.

### COUNT II—OHIO RICO (O.R.C. § 2923.23)

Comes now, Plaintiff, by counsel, and complains against Defendants and states as follows:

39. Plaintiff restates and incorporates by reference rhetorical paragraphs 1-38 of Plaintiff's Complaint for Damages.

40. Ohio Revised Code § 2923.23 prohibits the receipt of proceeds derived from a pattern of corrupt activity, including racketeering activity as defined under 18 U.S.C. §1961, and use of such receipts in the operation of any enterprise.

6

41. National Marine was engaged in a pattern of racketeering activity through its scheme to defraud financial institutions and consumers by routinely taking possession of trade-in boats and selling the boats without discharging the security interests and liens on the used boats.

42. Defendants conspired with National Marine by permitting National Marine to include these used boats in National Marine's Floor Plan and sell these used boats to subsequent purchasers still subject to Defendants' security interests and liens.

43. Defendants knew or should have known about National Marine's misrepresentations regarding their intentions to discharge the security interests and liens on the used boats and their failure to do so, including Defendants' security interests on Plaintiff's boats.

44. Defendants conspired with National Marine in its scheme to defraud financial institutions and consumers by continuing to provide National Marine with financing through the Floor Plan financing arrangement and failing to require National Marine to discharge Defendants' liens at the time of trade-in and at the time of subsequent sales.

45. Defendants received proceeds derived from a pattern of corrupt activity and thus are guilty of engaging in a pattern of corrupt activity.

46. Plaintiff sustained injury as a result of Defendants' conduct in their relationship with National Marine.

**WHEREFORE**, Plaintiff respectfully requests the following:

        A.    Rescission of the contracts with Defendants.

        B.    Incidental damages.

        C.    Consequential damages.

        D.    Actual damages.

        E.    Punitive damages.

        F.    Pre and post judgment interest.

        G.    Return of all payments made by Plaintiff to Defendants.

        H.    All other just and proper relief.

## COUNT III—NEGLIGENT LOAN ADMINISTRATION

Comes now, Plaintiff, by counsel, and complains against Defendants and states as follows:

47. Plaintiff restates and incorporates by reference rhetorical paragraphs 1-46 of Plaintiff's Complaint for Damages.

48. Defendants knew or should have known about National Marine's financial instability and repeated failures to discharge liens on trade-in boats at or around the time of Plaintiff's transactions with Defendants and National Marine.

49. Defendant Sky did not require National Marine to discharge the debt on the Top Gun either at the time National Marine took title from Plaintiff nor at the time the Top Gun was sold to Wanamaker.

50. Defendant Home Savings permitted National Marine to make payments on Plaintiff's loan and delay discharge of the security interest and lien by six months instead of requiring that National Marine fully discharge the debt at the time it received the 42' Boat from Plaintiff in accordance with O.R.C. 1548.20(D)(2).

51. Defendants had a duty to process the loans for Plaintiff's boats in a proper and thorough manner using prudent business practices.

52. Defendant Sky did not use prudent business practices by permitting National Marine to take title to the Top Gun without discharging its security interest and lien in accordance with O.R.C. 1548.20(D)(2), and for permitting National Marine to transfer the Top Gun to Wanamaker still subject to its security interest and lien.

53. Defendant Home Savings did not use prudent business practices by financing the purchase of the Top Gun to Wanamaker with it still being subject to Defendant Sky's lien.

54. Defendant Home Savings did not use prudent business practices by permitting National Marine to make payments on Plaintiff's loan and delay discharge of Defendant's security interest and lien on the 42' Boat by six months.

55. Defendants could foresee that their failure to process the loans for Plaintiff's boats in a proper, thorough and lawful manner by requiring their liens to be fully discharged upon the transfer of Plaintiff's boats to National Marine would result in harm to Plaintiff in that Plaintiff would continue to be obligated under the notes on the boats after delivering them to National Marine.

56. Plaintiff suffered damages proximately caused by Defendants' actions.

**WHEREFORE**, Plaintiff respectfully requests the following:

    A.    Rescission of the contracts with Defendants.

    B.    Incidental damages.

    C.    Consequential damages.

    D.    Actual damages.

    E.    Pre and post judgment interest.

    F.    Return of all payments made by Plaintiff to Defendants.

    G.    All other just and proper relief.

## COUNT IV—BREACH OF CONTRACT

Comes now, Plaintiff, by counsel, and complains against Defendants and states as follows:

57. Plaintiff restates and incorporates by reference rhetorical paragraphs 1-56 of Plaintiff's Complaint for Damages.

58. The loan contracts entered into for the financing of watercraft to Plaintiff were binding contracts, and Defendants were obligated to perform their obligations thereunder.

59. Defendants routinely utilized National Marine to assist in the loan administration process on behalf of Defendants.

60. Plaintiff performed all of his obligations under the contracts by arranging for the release of the security interests and liens through National Marine, who was acting on behalf of the Defendants in the administration of the loan contracts.

61. Defendants failed to perform their obligations under the contracts by not discharging their security interest and liens on Plaintiffs' boats once Plaintiff arranged for the loans to be paid off and transferred possession and title to said boats to National Marine, without justifiable excuse, and thereby breached the contracts.

**WHEREFORE**, Plaintiff respectfully requests the following:

      A.    Rescission of the contracts with Defendants.

      B.    Recoupment of all payments made by Plaintiff under the contracts.

      C.    All other just and proper relief.

## JURY DEMAND

Come now Plaintiff, by counsel, and hereby demands a trial by jury.

Respectfully Submitted,

Gerald B. Coleman, Esq. 16009-49
Attorney for Plaintiff

**COLEMAN STEVENSON & MONTEL, LLP**
9101 North Wesleyan Road, Suite 100
Indianapolis, IN 46268